## UNITED STATES v. SUMPTER.

United States District Court
S. D. New York.
April 10, 1953.

508

Myles J. Lane, U. S. Atty., New York City (Daniel H. Greenberg, New York City, of counsel), for petitioner.

Thomson & McGinty, New York City (J. C. Thomson, New York City, of counsel), for respondent.

WEINFELD, District Judge.

This is a motion pursuant to Title 28 U.S.C.A. § 2255 for an order vacating the judgment of conviction of Joseph Sumpter, the petitioner, and the sentence imposed thereunder.

The basis of the motion in substance is that the petitioner was deprived of a fair trial because of the lack of effective representation by his counsel. In support of the charge he alleges:

(1) that his attorney was not "mentally alert" during the trial; that he failed to cross-examine witnesses properly, to make objections, and to take exception to a portion of the Court's charge; that he failed to ascertain an alleged discrepancy in the overt acts as set forth in the original and the superseding indictments;

(2) that there was not proper preparation for trial;

(3) that he was prevented from testifying in his own behalf by the attorney;

(4) that the attorney represented a co-defendant whose interests were in conflict with his, Sumpter's.

Sumpter was indicted with four others in a two-count indictment. He was named only in the conspiracy count. The substantive count charged violations of the narcotics laws. He and three codefendants were convicted after a three-day trial.[1]

The petitioner was sentenced to a five-year term. The other defendants, who are not involved in this motion, received like sentences on the conspiracy count and ten years on the substantive count, to run concurrently.

The petitioner's participation in the conspiracy centered about a number of overt acts which took place at a bar at 116th Street and 8th Avenue, New York City, relating to the prospective sale of narcotics, the testimony as to which was given by an informer and a special agent of the Bureau of Narcotics.

Upon the filing of the petition, the matter was set down for hearing, at which petitioner was present pursuant to the direction of the Court. He testified in support of the charges and the attorney who represented him upon the trial also testified, having been called by the government to rebut the charges.

▮▮▮▮ The judgment of conviction here collaterally attacked carries with it the presumption of regularity.[2] The petitioner has the burden of establishing by a preponderance of the evidence his charge that he was denied effective representation by counsel. Here allegations of incompetency, inefficiency, or of mistakes or errors in the course of trial are not sufficient to sustain the burden. To succeed, petitioner must establish that the purported representation by counsel was such as to make the trial a farce and a mockery of justice [3]—that, in fact, it was no representation and so deprived him in violation of the Sixth Amendment of his "right * * * to have the Assistance of Counsel for his defence."

Upon a full consideration of the testimony taken upon the hearing, and after observation of the witnesses appearing thereat and their demeanor and conduct, and a review of the files and records of the case, including a transcript of the evidence upon the trial, I am convinced that the charges made have not been sustained. Accordingly, I make the following

### Findings of Fact

(1) That the petitioner, prior to the 18th day of February 1952, had been represented by counsel of his own selection in connection with an indictment, No. 135–600, filed June 4th, 1951, and a superseding one, No. 136–343, filed November 5th, 1951, copies of which had been received by him. That petitioner did not intend that said attorneys represent him upon the trial.

(2) That on or about February 18th, 1952, one week prior to the commencement of trial, upon the superseding indictment, the petitioner, together with one of his codefendants, Taylor, jointly retained Samuel W. Altman, Esq., an attorney, to defend them upon the trial. Altman, a member of the Bar for more than forty years, has specialized in, and has had considerable experience, representing defendants in criminal prosecutions in the Federal and State Courts. Taylor, who was named in the two counts, agreed to pay the attorney's fee. Sumpter was without funds to make any contribution thereto, having exhausted his resources in engaging his prior attorneys. Taylor and Sumpter were long-time friends, and according to petitioner's testimony, had been engaged in the "numbers" business, he, as a collector.

(3) The attorney ascertained from Sumpter and Taylor their version of the charges and their defense thereto to determine if any conflict of interest precluded his representation of both, and concluded there was no such impediment. Nothing in the record or evidence warrants any other conclusion.

---

1. The indictment had been severed as to the fifth defendant.

2. Ex parte Cuddy, 131 U.S. 280, 9 S.Ct. 703, 33 L.Ed. 154; Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L. Ed. 1461.

3. Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L.Ed. 1461; Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14; United States v. Wight, 2 Cir., 176 F.2d 376; Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667.

(4) Sumpter's purported defense was a denial of the conspiracy charges or the commission of the overt acts. A statement made by him subsequent to the trial indicates that he does not deny that he may have been present at the place where, and the times when, the government witnesses testified he had the conversations. No alibi was, or is, advanced. No claim is made that any witnesses were available, other than petitioner, to support the defense of denial.[4]

(5) The trial commenced on February 25th, 1952, and was continued on February 26th and 27th, when the jury returned a verdict of guilty against all defendants. The case had originally been called for trial in the Calendar Part and then assigned to the Trial Part. After some delay, counsel representing the various defendants announced that they were ready; attorney Altman stated to the Court that he appeared on behalf of both petitioner and Taylor. There was no claim by petitioner that he did not have, or was not represented by, counsel; he sat by counsel throughout the entire three-day trial and conferred with him at various times as the trial progressed.[5]

(6) The claim now advanced by petitioner that he was not advised that if unable to obtain counsel the Court would appoint one to assist in his defense, is specious. Since he was represented in all preliminary stages leading to the trial, and upon the trial itself, by counsel of his own choice, there was no occasion for the Court to inquire whether he required Court-appointed counsel, especially so since counsel stated, in petitioner's presence, that he represented him and was ready to proceed.[6]

(7) The charge that the petitioner first met Altman five minutes before the trial and that the latter proceeded without adequate preparation, is not sustained. On the contrary, the Court finds that prior to the date of trial the matter had been prepared to the extent that preparation was possible in the light of the defense.

(8) As to the charge that the attorney, because of a physical condition, was not "mentally alert," it is true that sometime before the trial he had sustained a sprained ankle, but in no respect did this impair his faculties or ability to defend petitioner and fully protect his rights and interests.

The attorney conducted an effective and vigorous defense on behalf of petitioner, and the cross-examination of Hunter, the informer, and the government agent, as well as other government witnesses, was thorough and complete. All government witnesses were subjected to a vigorous cross-examination with respect to each overt act and on every essential point. Particularly, a heavy attack was directed against the informer's extensive prior criminal record and illicit activities in order to destroy his credibility.

The failure of the attorney to ascertain the difference in the overt acts as alleged in the two indictments, assuming this reveals a discrepancy in the testimony given by the witness Hunter before the grand jury and that offered upon the trial, does not reflect incompetency, lack of preparation, or inattention to his client's interests. Petitioner was fully aware at the time Altman was retained that there had been a prior indictment, but did not then, or at any time through to the conclusion of the trial, advise him of this. The attorney did not ascertain this fact until some two weeks after the trial. Even if knowledge had been acquired by him in time, there is no indication that this would have made any substantial difference in the cross-examination of Hunter.[7]

4. Cf. Swope v. McDonald, 9 Cir., 173 F.2d 852, 855.

5. Cf. Moss v. Hunter, 10 Cir., 167 F.2d 683 and cases cited; United States v. Mitchell, 2 Cir., 138 F.2d 831.

6. Had the Court attempted to interfere with petitioner's choice of counsel or the conduct of the defense, it may well have constituted error. Cf. United States v. Bergamo, 3 Cir., 154 F.2d 31.

7. United States v. On Lee, 2 Cir., 201 F. 2d 722. Petitioner assumes that a motion for inspection would have been granted. But see United States v. Alper, 2 Cir., 156 F.2d 222, 226.

■ The failure of the attorney to call the Court's attention to the inadvertent reference in the charge to the petitioner as "Skeets," when it was evident that the reference was to the codefendant Hoffler, is frivolous. Apart from the fact that a reading of the entire charge indicates that the reference was to Hoffler, the jury was specifically instructed to disregard the Court's comment when not in accord with its own recollection of the evidence.

■ That the trial did not result in petitioner's acquittal indicates no lack of ability in the conduct of the defense.

(9) Petitioner's failure to testify in his own behalf was a decision to which he agreed after a discussion with his attorney, who had recommended against it in view of petitioner's prior conviction, a manslaughter charge. At no time did he make known to the Court any desire to offer himself as a witness, nor did he advise the Court of any alleged action by the attorney which prevented him from so doing. Sumpter observed one codefendant, Green, testify in his own behalf, and was fully aware of his right also to testify. He reads and understands the English language, is able to express himself with clarity, was fully cognizant of all proceedings and was competent to have made known to the Court any fact which should have been called to its attention.

(10) The charge that after the trial the United States Attorney and his assistants came into possession of evidence which would establish petitioner's innocence, is not sustained. There is no proof that any such evidence exists.

### Conclusion of Law

■ (1) The petitioner had the effective aid and assistance of counsel of his own choice. He was afforded an opportunity to be heard, to offer testimony and to cross-examine witnesses. His defense was competently and vigorously presented by his counsel and his interests fully protected.

■■ Petitioner was entitled to a fair trial. He was not entitled to a flawless trial. He was entitled to reasonably competent counsel. He was not entitled to

infallible counsel. Sumpter had the benefit of more than reasonably competent services and also the devotion of a loyal advocate.

In all respects, he had a fair trial and was deprived of no constitutional right.

The motion is denied.

Settle order on notice.